# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PAUL LOVE,

        Plaintiff,

      v.

CENTRAL STATES, SOUTHEAST
AND SOUTHWEST AREAS
PENSION PLAN,

        Defendant

Case No. 1:11-cv-275

Weber, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Paul Love filed a complaint claiming a wrongful determination of his retirement benefits pursuant to the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132. Defendant Central States, Southeast and Southwest Areas Pension Plan ("Central States") is an ERISA regulated employee pension benefit plan. 29 U.S.C. § 1001 et seq. This matter is now before the Court on the parties' cross-motions for judgment (Docs. 12, 15) and the parties' responsive memoranda. (Docs. 16, 18). The pending motions have been referred to the undersigned Magistrate Judge for initial consideration and a Report and Recommendation. 28 U.S.C. § 636(b).

### I. Background and Procedural History

Defendant Central States is a not-for-profit Taft-Hartley trust regulated by ERISA. 29 U.S.C. § 1001 et seq. It is a multi-employer employee pension benefit plan as defined in 29 U.S.C. § 1002(2)(A). In 2004, Plaintiff had been employed by Zenith Logistics, Inc. ("Zenith") since 1980. Throughout Plaintiff's employment, Zenith had a collective bargaining agreement with Truck Drivers, Chauffeurs and Helpers Local Union No. 661

("the Union"), an affiliate of the Teamsters and was a contributing employer of the Pension Fund. As an eligible employee, Plaintiff was a participant, as that term is defined by ERISA, in the Pension Fund.

The Pension Fund is administered by a board of trustees with equal representation from management and labor. (Doc. 13, Affidavit of Albert Nelson ( "Nelson Aff."), p. 4., Ex. B). The Trustees administer the Pension Fund as necessary to provide retirement benefits to covered employees in the Teamster Industry, who earn pension credits when their employers pay contributions to the Pension Fund for retirement benefits. *Id.*, Ex. A. Contributions made to the trust are deductible by the employers who make them and do not constitute income to the trust. (Doc. 13, Nelson Aff., ¶ 21).

The Central States Pension Fund Trust Agreement grants the Trustees discretionary power and authority to administer the trust in the interest of the participants and beneficiaries of the Fund and grants the Trustees discretionary power and authority to decide claims for benefits and construe the terms of the Pension Plan. (Doc. 13, Nelson Aff., Ex. A, pp. 9, 15-16). A decision of the Trustees denying a Plan benefit does not result in savings for investors; it only protects Fund assets for all participants and beneficiaries. Because the Fund is a non-profit trust, payment of benefits to any one person that are not allowed by the terms of the Plan reduces the assets available to pay allowable benefits. (Doc. 13, Nelson Aff., p. 5).

The Trust Agreement states that the Trustees have the power to determine controversies. (Doc. 13, Nelson Aff., Ex. A, Article V, § 2). All questions or controversies arising between any parties in connection with the Fund or its operation, whether as to any claim for benefits or as to the construction of the language or meaning of the rules and

regulations adopted by the Trustees, shall be submitted to the Trustees, or to a committee of the Trustees "and the decision of the Trustees or of such committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefit thereunder." *Id.* Ex. *A* at p. 18. The Trust Agreement also states that the Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and Trustee decision construing Plan Documents of the Pension Fund. *Id.*

### A. The Pension Plan

The Central States Pension Fund Plan Document contains the requirements for participation in the Fund and the terms, conditions and limitations regarding the payment of pension benefits and the appeal of denied benefit claims. (Doc. 13, Nelson Aff., Ex. B). Section 7.01 of the Pension Plan describes the discretionary authority granted to the Trustees to control and manage the operation and administration of the Pension Fund. (Doc. 13, Nelson Aff., Ex. B, p. 68). Under the Plan, Contributions are defined as follows: "Employer Contributions are Contributions which a Contributing Employer is required to make to the Pension Fund, based upon either a Collective Bargaining Agreement or an applicable law...at rates established by the terms of a Collective Bargaining Agreement." (Doc. 13, Nelson Aff., Ex. B, p. 4 , § 1.08(a)).

Section 1.08(b)(5) of the Plan also provides that "[a]n Employee shall also be permitted to make Self-Contributions for a period when he is on the seniority list of a Contributing Employer in an authorized leave of absence status. Self-Contributions for a leave of absence must be submitted at the time of the leave or as provided in the Collective Bargaining Agreement covering the Employee." (Doc. 13, Nelson Aff., Ex. B, p. 6). With

respect to "Contributory Service," the Plan states that a Participant shall earn Contributory Service for any employment with a Contributory Employer who is required to make Employer Contributions on his behalf according to a Collective Bargaining Agreement. (Doc. 13, Nelson Aff., Ex. B, p. 7).

The Plan further provides that "Self-Contributions cannot be made and are not acceptable for any period after December 31, 2003, unless the period of the layoff, sick leave, other leave of absence or approved strike, on which the Self-Contributions are based, commenced before and was continuing on January 1, 2004." *Id.* at p. 4, § 1.08(b). "Self-Contributions are voluntary Contributions made to the Pension Fund by an Employee for a period of employment for which his Contributing Employer is not required by his Collective Bargaining Agreement, to make Employer Contributions on his behalf." *Id.*

The Plan grants the Board of Trustees "authority to control and manage jointly the operation and administration of the Pension Fund and of this Pension Plan in accordance with the terms of the Trust Agreement and of this Pension Plan and amendments thereof..." (Doc. 13, Nelson Aff., Ex. B, p. 85). In that regard, "[a]ll decisions by the Board of Trustees, including all rules and regulations adopted by the Board of Trustees, all amendments of the Trust Agreement and this Pension Plan by the Board of Trustees and all interpretations by the Board of Trustees of any said documents, shall be binding upon all parties to the Trust Agreement, the Union, each Contributing Employer, all individuals claiming benefits pursuant to this Pension Plan or any amendment thereof and all other individuals engaging in any transaction with the Pension Fund." (Doc. 13, Nelson Aff., Ex. B, p. 85, § 7.03).

Appendix B of the Plan contains Benefit Claims and Appeals Procedures which outline the process that a claimant for plan benefits may appeal the denial of any benefit

4

to the Trustees. (Doc. 13, Nelson Aff., Ex. B, pp. B1-B7). The appeals procedure states, "[t]he burden of proof in demonstrating any fact essential to the approval of any claim for benefits, including eligibility for any claimed benefit and the extent to which a claimed benefit is covered or payable in accordance with this Pension Plan, shall at all times be the responsibility of the claimant..." *Id.* at B6. The appeals procedure states, "The Trustees are vested with discretionary and final authority in making any determination within the scope of the APPENDIX B." *Id.*

*B. Plaintiff's Claim for Benefits and the Administrative Record*

As noted above, Plaintiff was employed by Zenith under a Teamster Union collective bargaining agreement which required Zenith to make contributions on Plaintiff's behalf to Defendant to earn retirement benefits. Plaintiff last worked at Zenith in 2003 "during the week of Nov. 9-13." (Doc. 14, Administrative Record (hereinafter referred to as ("AR") at 27)).

On December 16, 2003, Plaintiff executed a "Request for Leave of Absence/Extension" form requesting a leave of absence from work from December 28, 2003 until "eligible for 25yr retirement pension." (AR 15). Plaintiff listed the reason for the request as "reasons discussed at our meeting." *Id.* The request form also provided that in order to secure leave, the employee is required to pay sufficient monies to pay the required contributions to the pension fund during the period of absence. *Id.* The leave of absence request was approved by Zenith on December 24, 2003. *Id.*

On January 22, 2004, Plaintiff, Zenith and the Union executed a letter agreement prepared on December 16, 2003, clarifying the agreement between Zenith and Plaintiff (and his Union) regarding his status. (AR 16). The letter stated:

5

You will be placed in a "terminal leave of absence" status.

You will be kept on the seniority roster as long as necessary during calendar year 2004 to qualify for retirement benefits.

You will not be eligible to return to work.

The company will make payments to Central States for your retirement contributions and you will agree to reimburse the company for these contributions on the agreed date. This contribution should be for $4720 to fund the 40 week period.

The company will not challenge any unemployment claim you may file.

(AR 16).

On March 1, 2004, Plaintiff sent a check to Zenith for his self-contributions as outlined in the January 2004 agreement. (AR 14). Zenith, however, failed to send the contributions to Defendant on Plaintiff's behalf. (AR 18). Zenith also removed Plaintiff from its monthly pension report submitted to Defendant.

Plaintiff submitted an application for retirement benefits in July of 2004 naming a retirement date of September 23, 2004. (Doc. 1, Ex. B). His application was finalized on September 10, 2004, and he retired on September 23, 2004. (AR 1). Thereafter, on October 4, 2004, Plaintiff telephoned Defendant's Toll-Free Department and said that his monthly pension check of $610.74 was incorrect, because he should be receiving a pension of $1,500.00 per month. (AR 30).

On October 18, 2004, Defendant sent Plaintiff a letter informing him that his benefit was based on 24 years of contributory credit. (AR 25). The letter also indicated that because Plaintiff was on sick leave before retiring, he could have made Self-Contributions for 2004, but that Self-Contributions could not be permitted at this point because his benefit had been finalized. (AR. 25).

*C. Plaintiff's Appeal*

On November 18, 2004, Plaintiff completed a Pension Benefit Appeal Form, in which

he appeal the calculation of his pension. (AR 22-23). Plaintiff asserted that "the denial, in part, is incorrect because the status with my Employer was SICK LEAVE/LEAVE OF ABSENCE. My Employer agreed to continue paying my pension benefits until 9-23-04, my anniversary date." (AR 22). Plaintiff further stated:

> Based on the information in Central States letter, dated 10 18 04, Central State (sic) was aware of my status thru their inquiry to the Employer. This inquiry should have been between 7 22 04 and 9 23 04. Your original pension findings were based on this information. Central States letter, dated 7 22 04, states 'After we have everything we need we will let you know if your application can be approved.' I did not receive any correspondence regarding my application for 25 year retirement. Central States did not send any correspondence, to the contrary, to my original application for 25 year retirement. Now after receiving my first check in October, 2004, I inquired as to the small amount of pension benefit, I received Central States letter, dated 10 18 04 with all the necessary facts that I should have originally received prior to the 9 23 04 (Anniversary) DEADLINE. Central States did not follow their procedures, as stated in letter dated 7 22 04. Since there is only one employer, Central States had ample time (60 days) to notify me if a problem existed, so that it could be resolved.

(AR 22-23).

On February 21, 2005, Zenith submitted a letter to Defendant stating, in part, that Plaintiff was placed on a leave of absence in 2004 to resolve a number of personal issues and Zenith anticipated that he would remain on leave until he had the necessary time to retire with full pension. (AR 9). Zenith subsequently submitted Plaintiff's Self-Contributions and the check was processed by Central States on March 3, 2005. (AR 24).

Thereafter, on April 6, 2005, Defendant's Benefit's Claim Appeals Committee (BCAC) sent Plaintiff a letter indicating that his Self-Contributions for 2004 had been submitted by Zenith. The letter further indicated that such contributions could be accepted and applied toward his pension benefit "***provided that*** you submit copies of your written

application for a leave of absence and contemporaneously prepared letter from Zenith

Logistics and Local Union 661 approving your leave of absence. . . ." (AR 20).  The letter

further stated:

> The enclosed letter from Zenith Logistics dated February 21, 2005 stated that
> Love had sustained medical and personal problems which led to his leave of
> absence in 2004.  In accordance with Sections 1.08 -1.09 of the enclosed
> Pension Plan, we will need the contemporaneously prepared documentation
> outlined above from Zenith Logistics to support your leave of absence status
> through your September 23, 2004 retirement date.   Provided that all
> documentation is submitted, the 2004 Contributions through September 23,
> 2004 will support .975 year (39 weeks) of Credit for 2004 for a total of 24.975
> years of Contributory Service Credit through your September 23, 2004
> retirement date. As a result, your Contribution-Based Pension will increase
> to $627.33 per month.  Unfortunately, you have not established eligibility for
> a 25 Year Contributory Credit Pension because as of your September 23,
> 2004 retirement date, you could have established only 39 of the 40[1] weeks
> in 2004 necessary to reach 25 years of Contributory Service Credit.[2]

(AR 20).

On April 14, 2005, Plaintiff sent copies of the leave of absence request form, the

leave of absence agreement letter and a copy of the check Plaintiff submitted for his Self-

Contributions.  (AR 13).

Upon review of the documents submitted by Plaintiff, Defendant determined that

Plaintiff's Self-Contributions "cannot be accepted for any period after January 22, 2004, the

date you executed the letter of agreement. . . [because] you were not on a bona-fide leave

of absence, but were in fact terminated and that the letter of agreement dated December

16, 2003 . . . is in fact a termination agreement."  (AR 12).  Plaintiff was further informed

---

[1]   40 weeks of contributions resulted in one year of contributory credit for purposes of calculating an
individuals pension amount.  (Doc. 13, Nelson Aff., Ex. B at 10-11).

[2]   That fact that Defendant would not have previously informed Plaintiff that he was one week short of
contributory credit for a pension based on 25 years of service prior to this point is disturbing to the Court,
as the record clearly indicates that Plaintiff applied for his 25 year retirement benefit.

that he may appeal the decision to the Trustees. *Id.* Plaintiff appealed the decision. (AR 8).

On September 14, 2005, the Trustees reviewed Plaintiff's administrative appeal to submit 40 weeks of Self-Contributions in 2004 and to establish a full year of credit for 2004.[3] Based on the evidence in the administrative record, the Trustees' unanimously determined, "that Paul Love, Sr. is not qualified to remit any Self-Contributions for any time period after January 22, 2004, with said determination on the basis of the specific circumstances presented, including the facts and reasons cited in a letter to Mr. Love from William Topel dated May 4, 2005 . . . in which Mr. Topel stated that 'the letter of agreement dated December 16, 2003 . . . is in fact a termination agreement'." (AR 3-4).

On September 21, 2005, Defendant sent Plaintiff a determination letter explaining the reasons for the Trustees' decision to deny his administrative appeal. (Doc. 13, Ex. D). The letter indicated that based upon the language of the agreement signed by Plaintiff, Zenith and Teamster Local Union 661, the Trustees determined that Plaintiff was not eligible to make Self-Contributions for periods after January 22, 2004, "because your signed agreement with Zenith Logistics (and Local Union 661) terminated your right to return to work, and therefore, your employment effective January 22, 2004." *Id.* The letter further provided that Plaintiff had completed all of the steps available under the Pension Plan appellate process and now had the right to file an action pursuant to ERISA in an attempt to recover the disputed benefits.

---

[3] The Minutes of the Trustees meeting contained a summary of the relevant facts of Plaintiff's appeal (AR 1-3) and relevant documents. (AR 5-30).

*D.*    *The instant action*

Plaintiff filed the instant action on April 29, 2011, seeking to reverse Defendant's administrative decision that he was not entitled to retirement benefits based on 25 years of service. (Doc. 1). Pursuant to the Court's Scheduling Order, Defendant filed a motion to uphold the administrative decision on July 21, 2011. (Doc. 12). Thereafter, on September 20, 2011, Plaintiff filed a motion to reverse the administrative decision. (Doc. 15). The parties have also filed memoranda in opposition to their cross-motions for judgment. (Docs. 16, 18).

In addition, on November 17, 2011, Defendant filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Doc. 17). Thereafter, on November 30, 2011, Defendant also filed a motion to strike portions of Plaintiff's reply memorandum. (Doc. 20). Plaintiff did not respond to either of Defendant's latter-filed motions. In an Order filed concurrently with this Report and Recommendation, the undersigned denied both motions. Because the rulings on such motions are related to the analysis of the parties' cross-motions for judgment, the Court will provide a brief summary of its decision.

With respect to the motion for sanctions, Defendant asked the Court to consider evidence outside the Administrative Record, as a sanction, for the alleged improper conduct of Plaintiff's counsel. As detailed above, one of the central issues in this case is whether Plaintiff was on a bonafide leave of absence, and therefore eligible to make Self-Contributions for the year 2004. Plaintiff alleges that he was granted a proper leave of absence by his employer and was to remain on leave until his retirement on September 23, 2004. Defendant determined, however, that Plaintiff was not on a leave of absence but was in fact terminated on January 22, 2004.

10

In 2006, in connection with another lawsuit, Defendant obtained Plaintiff's personnel file from Zenith. Several documents in Plaintiff's personnel file clearly indicate that Plaintiff was terminated from his employment with Zenith for testing positive for drugs. (Doc. 17 at 20-22). However, the documents in Plaintiff's personnel file are not a part of the Administrative Record in this case.

After this case was filed, on June 20, 2011, Defendant sent Plaintiff's counsel a copy of Plaintiff's personnel file, and asked him not to proceed with the litigation as it was clear that Plaintiff was asserting untrue allegations; namely that Plaintiff was on a leave of absence when in fact he had been terminated. Plaintiff's counsel did not dismiss this suit and continued to assert the same allegations in his motion to reverse the administrative decision. Because Plaintiff's counsel continued to assert facts that are contradicted by the documents in Plaintiff's personnel file, Defendant asked the Court to consider evidence not in the Administrative Record, *i.e.* documents contained in Plaintiff's personnel file, as a sanction.

In *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618-19 (6th Cir.1998), the Sixth Circuit clarified when and to what extent a district court may go beyond the administrative record when reviewing a plan administrator's decision. The court is to conduct its review "based solely upon the administrative record." *Id.* at 619. Evidence outside the administrative record may be considered "only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* "This also means that any discovery at the district court level should be limited to such procedural challenges." *Id.* Neither party in the present case raised a procedural challenge to the

administrator's decision-making, nor did Defendant cite any authority in support of its assertion that such evidence is properly considered as a sanction against the nonmoving party. As such, the undersigned denied Defendant's motion for sanctions and determined that consideration of evidence outside the administrative record would be improper.

Defendant also sought to strike portions of Plaintiff's reply to Defendant's response to Reverse the Administrative Decision. (Doc. 20). Specifically, Defendant asks the Court to strike Plaintiff assertions that Defendant did not return the Self-Contributions he made to Central States. Defendant asserted that such statements should be stricken from the record because they were unsupported by any citations to the record or other evidence. *See* S.D. Ohio Civ. R. 7.2(a)(1) (a memorandum in support of a motion shall have citations to authorities relied upon). *See also* S.D. Ohio Civ. R. 7.2(e) (evidence ordinarily shall be presented, in support or opposition to any motion using affidavits, declarations, depositions, admissions, interrogatory answers and other documentary exhibits)).

As noted above, the Court's decision to reverse or affirm the administrative decision must be solely upon the administrative record. The Administrative Record does not include any evidence relating to the statements contained in Plaintiff's reply memorandum that Defendant sought to strike. Accordingly, Defendant's motion to strike was denied as moot as the Court must limit its review to the Administrative Record.

## II. Analysis

As detailed above, Plaintiff is seeking a $1,500 a month pension based on 25 years of contributory credit through his past employment with participating employers. His current pension of $610.74 is based on 24 years of contributory credit. Plaintiff asserts that Defendant improperly determined that Plaintiff was not entitled to make Self-Contributions

for the year 2004 because he was on an approved leave of absence. Ultimately, Plaintiff paid Self-Contributions for 39 weeks of credit and Zenith submitted the payment to Defendant. Plaintiff apparently intended to make 40 weeks of self-contributions, however, the retirement date he chose (September 23, 2004) was one week short of 40 weeks.

In his motion to reverse the administrative decision, Plaintiff argues first that Defendant improperly determined that Plaintiff was terminated in January 2004, and therefore disregarded the leave of absence agreement between Plaintiff and his employer. Plaintiff further asserts that Defendant should have informed Plaintiff that he was one week short of the 40 week requirement in order to receive a pension based on 25 years of service. Plaintiff argues that the "extension of his employment by one (1) week after 25 years would not have created any problem" and that Defendant intentionally "hid" such information about Plaintiff's miscalculated retirement date until it was too late for him to correct the mistake.

Defendant asserts that Plaintiff was not eligible for credit for his 39 weeks of Self-Contributions in 2004 because he had been terminated from Zenith in January 2004, and was not on a leave of absence at the time the Self-Contributions were made, as required for credit under the Plan. Accordingly, Defendant asserts that the Trustees reasonably determined that Plaintiff was entitled to a monthly pension based upon 24 years of service. Upon careful review and for the reasons that follow, the undersigned finds that Defendant's reasonably denied Plaintiff's appeal.[4]

---

[4] In making this determination, the Court recognizes the perceived unfairness of this result and is sympathetic to Plaintiff's plight. However, as more fully explained below, the law requires this result.

### 1.    Standard of Review

In adjudicating an ERISA action, the Sixth Circuit has directed the district court to use the following steps: (1) the district court should conduct a de novo review in consideration of the action's merits based solely upon the administrative record; the district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator; (2) the district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision and any prehearing discovery at the district court level should be limited to such procedural challenges; (3) the summary judgment procedures set forth in Rule 56 are inappropriate for ERISA actions and thus should not be utilized in their disposition.  *See Wilkins,* 150 F.3d at 619-620.

Further, pursuant to *Marks v. Newcourt Credit Group, Inc*., 342 F.3d 444, 457 (6th Cir. 2003), a court must determine whether an ERISA plan gives the administrator authority to determine eligibility for benefits or to construe the plan's terms. *Id.* (*citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  When an ERISA plan grants the plan administrator discretionary authority to determine benefit eligibility, as the Plan at issue in this case does, the district court must review the plan administrator's decision under the arbitrary-or-capricious standard. *Id.*

An outcome is not arbitrary or capricious where the evidence supports a reasoned explanation for that particular outcome. *See Killian v. Healthsource Provident Administrators, Inc*., 152 F.3d 514, 520 (6th Cir. 1998).  Under this standard, the administrator's decision is to be upheld "if it is the result of a deliberate, principled

reasoning process and if it is supported by substantial evidence." *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (*quoting Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)), *aff'd*, 128 S. Ct. 2343 (2008). Though a plan administrator may be vested with discretion, the court does not review the administrator's decision merely to "rubber stamp [the] decision." *Id.*

In applying the arbitrary and capricious standard a court will factor in whether a conflict of interest existed on the part of the decision-maker. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). However, when a decision is made by Trustees of a multi-employer benefit plan (such as Central States), where individual trustees receive no personal financial benefit from approving or denying claims, courts have concluded that this structure does not create an inherent conflict of interest. *See Klein v. Central States, Southeast and Southwest Areas Health and Welfare Plan*, 346 F.App'x 1, 5 (6th Cir. 2009) (citing *Manny v. Central States, Se. & Sw. Areas Pension & Health and Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004); *Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir.1989); *Muse v. Central States, Se. & Sw. Areas Health & Welfare Funds*, 227 F.Supp.2d 873, 877 (S.D. Ohio 2002)).

In this case, the parties agree that this Court's review is under the arbitrary and capricious standard. (Doc. 12 at 12; Doc. 15 at 2). Upon careful review, the undersigned finds that Defendant's Motion for Judgment should be granted – and Plaintiff's cross-motion denied – because the Defendant has offered a reasoned explanation for the denial of Plaintiff's appeal based upon the evidence.

## 2. Administrative Decision should be upheld

Applying the arbitrary and capricious standard of review, the undersigned finds that Defendant reasonably determined that Plaintiff was not entitled to credit for Self-Contributions from January 11, 2004 through September 23, 2004. *See Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009). "The Trustees have an obligation to maintain the actuarial soundness of their pension plan and not to grant pensions that violate the terms of the Plan. Granting pensions in violation of the Plan could subject the trustees to liability." *Bagsby v. Central States, Southeast and Southwest Areas Pension Fund*, 162 F.3d 424, 428-29 (6th Cir. 1998). Contrary to Plaintiff's assertions, the Administrative Record establishes that he was terminated from Zenith on January 22, 2004, and therefore, was not on a proper leave of absence as required to make Self-Contributions under the Plan for the year 2004. (AR 16). Accordingly, Defendant reasonably determined that Plaintiff was not entitled to 39 (or 40) weeks of contributory credit for 2004.

The undersigned finds that the Administrative Record clearly indicates that the Defendant's decision was "the result of a deliberate, principled reasoning process" and that such a decision was substantially supported. *See Glenn*, 461 F.3d at 666. In this case, Defendant reasonably determined that Plaintiff was terminated at the time he made Self-Contributions in 2004, and as a result, was not entitled to contributory credit for those contributions. As detailed above, the December 16, 2003 Agreement between Zenith and Plaintiff provides in pertinent part:

> You will be placed in a "**terminal leave of absence**" status.
> You will be kept on the seniority roster as long as necessary during calendar year 2004 to qualify for retirement benefits.

**You will not be eligible to return to work**.
The company will make payments to Central States for your retirement contributions and you will agree to reimburse the company for these contributions on the agreed date.  This contribution should be for $4720 to fund the 40 week period.
**The company will not challenge any unemployment claim you may file.**

(AR 16) (emphasis added).   Based on the language in the Agreement, Defendant reasonably determined that Zenith terminated Plaintiff's employment.[5]

Furthermore, Plaintiff and Zenith alleged that Plaintiff was placed on a leave of absence to "due to medical and personal problems," including " a drug problem."  (AR 8-10, 18, 28).   The Benefits Committee explicitly noted that Zenith stated that Plaintiff had sustained medical and personal problems which led to his leave of absence in 2004 and requested "contemporaneously prepared documentation . . . from Zenith Logistics to support your leave of absence status through your September 23, 2004 retirement date." (AR 20).  However, the Administrative Record does not contain any evidence in support of Plaintiff's alleged medical or personal problems necessitating a nine month leave of absence.

Finally, at the time Plaintiff's retirement application was submitted to Defendant, Zenith had not sent Defendant the Self-Contributions Plaintiff paid for contributory credit

---

[5]  Plaintiff argues that "[a]rbitrary and capricious conduct was found when a plan administrator, as is the case here, disregarded an agreement between a participant and an employer.  (Doc. 15 at 4) (citing *Hess v. Hartford Life & Acc. & Ins. Co.*, 274 F.3d 456 (7th Cir. 2001)). Plaintiff's reliance on *Hess* is misplaced. As noted by Defendant, *Hess* involved a dispute over the calculation of disability payments to a disabled employee, and whether such payments should be calculated under the terms of the Plan or in conjunction with the terms of the Plan and Plaintiff's employment contract.  Hartford's claims examiner did not review the employment contract and Hartford determined that payments should be calculated based upon the terms of the Plan.  *Id.* at 463.  The Court found that Hartford was required to review the employment contract in order to determine the proper calculation of the Plaintiff's disability benefits, and concluded that Hartford's failure to consider the contract in its calculation of benefits was arbitrary and capricious.  *Id.* Here, however, Defendant thoroughly reviewed the Agreement between Plaintiff and Zenith and reasonably determined that Plaintiff had been terminated on January 22, 2004.

in 2004.  And, Plaintiff's retirement application did not include a copy of his agreement with Zenith purportedly placing him on a leave of absence from January 22, 2004 through his retirement date of September 23, 2004.  As such, at the time Defendant processed Plaintiff's application it was unaware of the Self-Contributions Plaintiff made to Zenith for 2004 and of his "leave of absence" status.  Thus, his pension benefit was calculated based on 24 years of contributory credit based on his employment from 1980-2004.  (AR 28).  Notably, the record indicates that Plaintiff's last day of actual work with Zenith was in November 2003, and Zenith subsequently paid pension contributions for vacation pay and illness for 4 weeks.  (AR 27).  Defendant did not become aware of the Self-Contributions Plaintiff made until October 2004, after it had processed Plaintiff's retirement application and after Plaintiff had already begun receiving his monthly pension.  At that time, Plaintiff contacted Defendant complaining about the amount he was receiving, asserting that his pension had been miscalculated and that he is entitled to a 25-year benefit.  (AR 30).  Thus, the evidence of record indicates that Defendant properly processed Plaintiff's pension application based upon the information initially submitted by Plaintiff.

Accordingly, Defendant's decision – that Plaintiff was not permitted to make Self-Contributions for any time after January 22, 2004 -- was neither arbitrary nor capricious, and the administrative decision should be upheld.  *See Yeager,* 88 F.3d at 381-82.[6]

---

[6] Because the undersigned finds that the Administrative Record provides substantial support for Defendant's decision that Plaintiff was not entitled to credit for his 2004 Self-Contributions, it is unnecessary to address the merits of Plaintiff's alternative argument - that Defendant should have overlooked his mistake in selecting a retirement date, and given him 40 weeks of contributory credit, despite the fact that he only submitted Self-Contributions for 39 weeks.  (*See* AR 20).  Because Plaintiff was not entitled to make self-contributions as a result of his termination, the amount of such contributions is irrelevant.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED** that:

1.  The Defendant's Motion for Judgment on the Administrative Record (Doc. 12) be **GRANTED;**

2.  The Plaintiff's Cross-Motion for Judgment on the Administrative Record (Doc. 15) be **DENIED;** and that

3.  This case be dismissed with prejudice from the active docket of this Court.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PAUL LOVE,

      Plaintiff,

    v.

CENTRAL STATES, SOUTHEAST
AND SOUTHWEST AREAS
PENSION PLAN,

      Defendant

Case No. 1:11-cv-275

Weber, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).