**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**PAUL LOVE,**

        **Plaintiff**

      **v.**                      **Case No. 1:11-cv-275-HJW**

**CENTRAL STATES, SOUTHEAST AND**
**SOUTHWEST AREAS PENSION PLAN,**

        **Defendant**

## ORDER

      This matter is before the Court upon the plaintiff's complaint for judicial review of the administrative determination of his pension benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.  Plaintiff Paul Love has filed a "Motion to Reverse the Administrative Decision" (doc. no. 15), and the defendant Central States, Southeast and Southwest Areas Pension Plan ("Central States") has filed a "Motion to Uphold the Administrative Decision" (doc. no. 12). The Magistrate Judge entered a very thorough Report and Recommendation (doc. no. 22), recommending that the administrative decision be affirmed.  Plaintiff filed objections (doc. no. 25), to which defendant has responded (doc. no. 26).  The Court held a hearing for oral argument on March 27, 2012, with counsel and the parties personally present.  Upon *de novo* review, and having considered the entire record, the Court will <u>affirm</u> the administrative decision, <u>deny</u> the plaintiff's motion, and <u>grant</u> the defendant's motion, for the following reasons:

## I.  Background

The Magistrate Judge has extensively set forth the relevant facts in her Report and Recommendation, and those facts are incorporated herein.  Those facts are summarized as follows: The Central States, Southeast and Southwest Areas Pension Plan ("Central States") is a multi-employer pension plan maintained for the benefit of employees of contributing employers who have collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("Teamsters"). Plaintiff was employed by Zenith Logistic, Inc. ("Zenith") beginning in 1980 and was a member of the Teamsters.

Plaintiff last worked for Zenith during the week of November 9-13, 2003.  After that date, Zenith paid several more weeks of pension contributions to Central States for plaintiff's vacation and sick pay.  Plaintiff had approximately 24 years of service towards his pension.  Plaintiff, with the assistance of his union, negotiated  with Zenith for plaintiff to be designated as being on "leave status" so that he could make self-contributions in order to reach the 25-year mark necessary to obtain a larger pension.  On January 22, 2004, plaintiff, the union, and Zenith signed a letter agreement, dated December 16, 2003, indicating that Zenith would put plaintiff on a "terminal leave of absence," that plaintiff would <u>not</u> be eligible to return to work, that plaintiff would be kept on the roster only "as long as necessary during calendar year 2004 to qualify for retirement benefits," and that Zenith would not challenge any unemployment claim filed by plaintiff (AR 16).  Central States was not a party to this agreement.

Plaintiff made 39 weeks of self-contributions to Zenith, but Zenith did not immediately forward such payments to Central States.  Plaintiff applied for his retirement pension in July of 2004 (doc. no. 1, Ex. B).  Central States received plaintiff's application on July 21, 2004, and sent a letter the next day confirming receipt.  In his application, plaintiff selected September 23, 2004 as his retirement date.  After receiving his first pension check in a smaller-than-anticipated amount, plaintiff contacted Central States on October 4, 2004, to complain.  He then learned that based on the information submitted to Central States, he was entitled to a pension based on 24 years of service, with a monthly benefit of $610.74  rather than the $1,500.00 per month he was expecting for a 25-year pension.  By letter of October 18, 2004, Central States informed plaintiff that he would have needed an additional year of contributory credit service, that he could have made self-contributions to establish that credit, and that self contributions were not permitted after a pension benefit was final (AR 25).

On November 18, 2004, plaintiff administratively appealed, asserting that he had been on "leave status" and had made self-contributions to Zenith (AR 22-23). Zenith subsequently forwarded the self-contributions.  On April 6, 2005, Central States advised plaintiff by letter that it would accept the self-contributions, provided that plaintiff provided information verifying his leave status (AR 20). In other words, plaintiff needed to submit documentation showing that he had actually been <u>eligible</u> to make those self-contributions.  Central States adjusted plaintiff's monthly benefit to $627.33 to reflect the self-contributions, but informed plaintiff that his self-

contributions fell short of the forty (40) weeks necessary to receive a pension benefit for twenty five (25) years of service.  Plaintiff sent the requested documentation, including his "Request for Leave of Absence/Extension" and the letter agreement dated December 16, 2003 (AR 13). Plaintiff administratively appealed.

On September 14, 2005, the Trustees reviewed plaintiff's administrative appeal (AR 1-3, 5-30). They determined, based on the documents before them, that plaintiff had <u>not</u> actually been on a "leave of absence" from Zenith, but in fact, had been terminated on January 22, 2004.  They unanimously found that the letter of agreement dated December 16, 2003 was in fact a "termination agreement" and "that Paul Love, Sr. is not qualified to remit any Self-Contributions for any time period after January 22, 2004" (AR 3-4).  The Trustees advised plaintiff by letter that he "was not eligible to make Self-Contributions for periods after January 22, 2004, because your signed agreement with Zenith Logistics (and Local Union 661) terminated your right to return to work, and therefore, your employment effective January 22, 2004" (doc. no. 13-4 at 2, Determination Letter).

Plaintiff filed suit in federal court on March 17, 2006, seeking judicial review of the administrative appeal decision. See <u>Love v. Central States, Southeast and Southwest Areas Pension Fund</u>, Case No. 06-cv-146 (U.S. District Court, S.D. Ohio).[1] Plaintiff's attorney withdrew, and plaintiff failed to obtain new counsel.  The Honorable Judge S. Arthur Spiegel entered an order on January 11, 2007, dismissing

---

[1]Plaintiff has exhausted administrative remedies as required. <u>Ravencraft v. UNUM Life Ins. Co. of America</u>, 212 F.3d 341 (6th Cir. 2000) (observing that ERISA plaintiffs must exhaust administrative remedies prior to filing in federal court).

the case without prejudice for failure to prosecute.  Over four years later, plaintiff obtained new counsel, and on April 29, 2011, filed the present civil action for judicial review of the same administrative appeal decision.

After considering the parties' briefs and the administrative record, the Magistrate Judge recommended that the Trustees' decision denying plaintiff's administrative appeal for an increased pension benefit should be upheld because Central States had "offered a reasoned explanation for the denial of Plaintiff's appeal based on the evidence" (doc. no. 22 at 15).  Plaintiff has filed objections.

III.  Standard of Review

The "arbitrary and capricious" standard of review applies when the  benefits plan gives the plan administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan.  <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989); see also, <u>Glenn v. Metropolitan Life Insurance Co.</u>, 461 F.3d 660, 665-66 (6th Cir. 2006).  Here, the Central States Trust Agreement grants such discretionary authority to the Trustees, and the parties agree that the plan administrator had discretionary authority to determine plaintiff's eligibility for benefits.  Therefore, the "arbitrary and capricious" standard of review applies here.

Where the plan administrator for a pension fund offers a reasonable explanation based upon the evidence, the decision is not "arbitrary and capricious." <u>Bagsby v. Central States, Southeast and Southwest Areas Pension Fund</u>, 162 F.3d 424, 428 (6th Cir. 1998) (quoting <u>Davis v. Ky. Finance Cos. Retirement Plan</u>, 887 F.2d 689, 693 (6th Cir. 1989)).  In reviewing the administrative decision, the court is

confined to review of the administrative record. See Farhner v. United Transportation Union Discipline Income Protection Program, 645 F.3d 338, 343 (6th Cir. 2011); Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir. 1998). "If the Plan Administrator's decision is supported by substantial evidence, then it should be upheld." Farhner, 645 F.3d at 342.  The Court must give appropriate deference to the Trustees' decision to deny plaintiff's claim for additional contributory credit based on plaintiff's self-contributions in 2004.  Bagsby, 162 F.3d at 428.

## III Discussion

As discussed at length by the Magistrate Judge, the Central States' Plan is an ERISA-regulated employee pension benefit plan, and its Trustees have the necessary discretionary authority to administer the Plan and decide benefit claims.  As defendant further points out, "the Trustees are charged with fiduciary duties under ERISA § 404 to administer the Pension Plan, in accordance with the documents and instruments governing the plan . . ." (doc. no. 26 at 4, fn.1, citing 29 U.S.C. § 1104(a)(1)(D)).

The Appeal Committee's decision at issue here largely concerns two documents in the administrative record: 1)  the letter agreement entered into between plaintiff  and Zenith on January 22, 2004; and 2) the letter, dated June 6, 2005, from Zenith to Central States, accurately confirming that plaintiff would not have returned to work  at Zenith, even if capable, prior to his date of retirement.  The Trustees considered the administrative record, including these two documents, and concluded that plaintiff had not actually been on a leave of absence, but rather, had

been terminated from his employment, and thus, was ineligible to make self-contributions.

Plaintiff objects that the defendant should not be permitted to "modify or otherwise ignore the employment agreement between the Plaintiff and his employer . . . [which was] based upon a settlement of a dispute that had arisen between the employee, Paul Love and his employer, Zenith Logistics" (doc. no. 25 at 1-2). Although plaintiff complains that Central States should not be permitted to "ignore" the letter agreement, the Trustees' decision reflects that they fully considered the letter agreement and certainly did not "ignore" it. The Trustees considered the express terms of the letter agreement and appropriately deemed it to be a termination agreement.[2]

Although plaintiff contends that the letter agreement provided for his designation for a "terminal leave of absence" and that this was a valid negotiated agreement between plaintiff and his employer, plaintiff points to no relevant binding or persuasive authority for the proposition that the Appeals Committee was somehow "arbitrary and capricious" for carefully examining the actual terms of that letter agreement. Defendant asserts that Zenith and plaintiff could not use the letter agreement to override the specific terms of the Pension Plan, which required an employee to be in bona fide leave of absence status in order to be eligible to make

_____

[2]The Magistrate Judge points out that plaintiff's reliance on <u>Hess v. Hartford Life & Acc. & Ins. Co.</u>, 274 F.3d 456 (7th Cir. 2001) is misplaced because that case, unlike the present one, involved a failure to review an employment contract (doc. no. 22 at 17, n. 5).

self-contributions.

The Magistrate Judge thoroughly addressed the administrative record before the Trustees and recommended that the Appeals Committee had a substantial basis for its decision that plaintiff was actually terminated and ineligible to make further pension contributions. The Court agrees. The Trustees's decision was based on well-articulated reasons based on substantial evidence in the administrative record and was not "arbitrary or capricious."

Plaintiff also complains that Central States did not inform him at an earlier stage of the process that "a problem existed" with his pension application. In other words, plaintiff contends that the defendant should have notified him earlier regarding the purported one-week shortfall in his self-contributions based on his designated retirement date (doc. no. 25 at 4). In his objections, plaintiff speculates that, if he had been able to change his choice of retirement date at an earlier point in the process, he might have been able to avoid review of his eligibility to make self-contributions.[3]

In the first place, when Central States initially processed plaintiff's pension application, it processed the application correctly based on the information before it. Defendant points out that "that at the time Love retired, and Central States processed his pension, he was not one week short of contributions, he was an entire

---

[3]Defendant correctly points out that the October 13, 2004 staff note merely indicated that plaintiff was already retired and receiving pension payments  based upon 24 years of service when plaintiff had called Central States to ask about payments for a 25 years pension (doc. no. 26 at 8).

year short of contributions for 2004" (doc. no. 26 at 9).

Secondly, plaintiff's suggestion that he might have gained a procedural advantage, i.e. avoided subsequent review of his eligibility, does not mean that the Trustee's determination regarding plaintiff's non-eligibility must now be overturned. As the defendant and the Magistrate Judge have both pointed out, "[b]ecause Plaintiff was not entitled to make self-contributions as a result of his termination, the amount of such self-contributions is irrelevant" (doc. no. 26 at 3, citing Report and Recommendation, at 18 fn. 4).  Plaintiff's objection fails to show that Central States's decision upon the substantial evidence before it was "arbitrary and capricious." Defendant aptly points out that plaintiff lost his job in January of 2004 and that "Zenith cannot fire Love and expect Central States to pay him a pension he did not earn" (doc. no. 26 at 10-11).  While plaintiff may be a sympathetic figure after being fired one year short of accruing a higher pension benefit, the Trustees have the fiduciary duty to administer the Pension Plan according to its terms and cannot approve a pension larger than actually earned. See Bagsby, 162 F.3d at 428-29 (explaining that "trustees have an obligation to maintain the actuarial soundness of their pension plan and not to grant pensions that violate the terms of the Plan" and concluding that the "trustees' calculation of the plaintiff's Contributory Service Credit was thus perfectly in tune with the terms of the Central States Plan").

In conclusion, the administrative appeal decision must be upheld because it was the result of a deliberate, principled, reasoning process and is supported by substantial evidence in the administrative record considered by the Trustees. See

<u>Glenn</u>, 461 F.3d at 666.  Plaintiffs objections are without merit.

Accordingly, Central States's "Motion to Uphold the Administrative Decision" (doc. no. 12) is GRANTED; the plaintiff's"Motion to Reverse the Administrative Decision" (doc. no. 15) is DENIED; the Magistrate Judge's Report and Recommendation (doc. no. 22) is ADOPTED;  plaintiff's objections (doc. no. 25) are OVERRULED;  and the administrative decision is AFFIRMED.

This case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

   s/Herman J. Weber   
Herman J. Weber, Senior Judge
United States District Court
